[Cite as *Roubanes v. Roubanes*, 2013-Ohio-5778.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barbara A. Roubanes (nka Luke), | : | |
| Plaintiff-Appellant, | : | |
| | | No. 13AP-369 |
| v. | : | (C.P.C. No. 08DR-07-2851) |
| Matthew G. Roubanes, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 30, 2013

*Barbara Roubanes Luke*, pro se.

*Tyack, Blackmore, Liston & Nigh Co., L.P.A.*, and *Elizabeth R. Werner*, for appellee.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

McCORMAC, J.

{¶1} Plaintiff-appellant, Barbara Roubanes Luke, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, from an amended entry which denied her motion for reconsideration and sustained her motion to modify child support. Appellant contends that the trial court erred in determining the parties' incomes for child support purposes. For the following reasons, we reverse the trial court's judgment.

I. FACTS AND PROCEDURAL BACKGROUND

{¶2} The parties were married in 1998, had two children, and were divorced in 2009. Under the final divorce decree, appellant was obligated to pay $742.35 per month, per child for child support, which included $554.00 per month for 28 months to pay past arrearages and to equalize the property settlement. Appellant's income was stipulated as $75,000 and appellee's income was stipulated at $40,000. In November 2011, appellant was ordered to continue liquidating the arrearages at the rate of $554 per month. On August 31, 2012, appellant filed a motion to modify child support.

{¶3} The trial court held a hearing on February 20, 2013. The child support arrears as of that date were $28,440.93. (Tr. 196.) The trial court found that both parties presented evidence of a change in circumstances with regard to their incomes. The trial court then found that appellant's income was $40,439.82 in 2012 and that appellee's income was $40,921.00 for 2012 but, after legitimate deductions listed on his 2012 tax returns, found his income to be $17,189.00. Appellant was ordered to pay $308.98 per month per child, plus processing charge, as long as private health insurance is in effect. The trial court also ordered appellant to liquidate her arrearages by adding an additional 20 percent of the monthly child support order, plus processing, for a total of $756.39 per month.

## II. ASSIGNMENT OF ERROR

{¶4} Appellant filed a notice of appeal and raised the following assignment of error:

> THE TRIAL COURT ERRED IN CALCULATING THE PARTIES' GROSS INCOME FOR CHILD SUPPORT PURPOSES BY ALLOWING FATHER TO MAKE DEDUCTIONS BASED ON HIS TAX RETURNS WITH NO SUPPORTING RECEIPTS OR WITNESSES, AND BY NOT ALLOWING MOTHER TO TAKE DEDUCTIONS SUP- PORTED BY WITNESS TESTIMONY

## III. STANDARD OF REVIEW

{¶5} Child support issues are reviewed under an abuse-of-discretion standard and will not be disturbed absent a showing of an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A trial court has not abused its discretion simply because a reviewing court can reach a different result. *McClung v. McClung*, 10th Dist. No. 03AP-156, 2004-Ohio-240, ¶ 8.

## IV. DISCUSSION

{¶6} Appellant makes several arguments in regard to her assignment of error contending that the trial court erred in calculating the parties' gross income for child support purposes. Initially, she argues that the trial court abused its discretion in

allowing appellee to take $23,732 in deductions from gross income without any receipts or summary of business expenses or a supporting witness, which violates public policy demanding money available for child support purposes should be included in income.

{¶7} R.C. 3119.01(C)(7) defines "gross income," for purposes of determining child support, as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable[.] * * * 'Gross income' includes self-generated income; and potential cash flow from any source." *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390 (12th Dist.), ¶ 14, quoting R.C. 3119.01(C)(7). R.C. 3319.01(C)(13) defines "self-generated income" as "gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." "Ordinary and necessary expenses incurred in generating gross receipts" include "actual cash items expended by the parent or the parent's business." R.C. 3119.01(C)(9)(a). Each parent is required to verify their income and personal earnings "by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05(A).

{¶8} Federal and state tax documents provide a starting point for calculating a parent's income for child support purposes, but they are not the sole factor for the trial court to consider. *Foster* at ¶ 12, citing *Houts v. Houts*, 99 Ohio App.3d 701, 706 (3d Dist.1995). *See also Dannaher v. Newbold* 10th Dist. No. 05AP-172, 2007-Ohio-2936, ¶ 12. In *Wood v. Wood*, 10th Dist. No. 10AP-513, 2011-Ohio-679, ¶ 42, this court discussed the difference between determining income pursuant to the Internal Revenue Code and the child support guidelines, as follows:

> The purposes underlying the Internal Revenue Code and the child support guidelines are vastly different. * * * The federal tax code allows deductions from gross income based on a myriad of economic and social policy reasons that have no bearing on child support. *Id.* In contrast, the child support guidelines focus on determining how much money is actually available for child support purposes. *Id.* Consequently, a trial court must not blindly accept all of the expenses deducted on previous tax returns as ordinary and necessary business expenses incurred in generating gross receipts. *Id.*;

> *Buening v. Buening.* 3d Dist. No. 10-10-01, 2010-Ohio-2164, ¶ 13, *Dressler v. Dressler,* 12th Dist. No. CA2003-05-062, 2004-Ohio-2072, ¶ 10, 14.

*Wood* at ¶ 42, citing *Amlin v. Amlin*, 2d Dist. No. 2008CA15, 2009-Ohio-3010, ¶ 70.

{¶9} R.C. 3119.01(C)(9) provides the instructions for business cash expenditures and depreciation for child support purposes, as follows:

> (a) "Ordinary and necessary expenses incurred in generating gross receipts" means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.
>
> (b) Except as specifically included in "ordinary and necessary expenses incurred in generating gross receipts" by division (C)(9)(a) of this section, "ordinary and necessary expenses incurred in generating gross receipts" does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.

{¶10} As explained in *Marcus v. Marcus*, 2d Dist. No. 98 CA 83 (July 30, 1999):

> This exclusion of "depreciation expenses and other noncash items" from ordinary and necessary business expenses for child support purposes is "designed to ensure that a parent's gross income is not reduced by any sum that was not actually expended in the year used for computing child support." *Emary v. Emary* (Oct. 23, 1996), Lorain App. No. 96CA006353, unreported, quoting *Baus v. Baus* (1991), 72 Ohio App.3d 781, 784, 596 N.E.2d 509. The reason for this is that depreciation expenses for federal income tax purposes are not "actual cash outlays" of that corporation for the tax year. *Harter* [*v. Harter*, 3rd Dist. No. 1-97-55 (Feb. 26, 1998)].

{¶11} Thus, for child support purposes, the Ohio Revised Code permits the deduction of depreciation expenses which relate to the replacement of equipment but not the deduction of depreciation expenses for other noncash items. R.C. 3119.01(C)(9)(a) and (b).

{¶12} In this case, appellee presented an unsigned copy of his personal 2012 tax return and the tax return of his S-corporation. He testified that he had income from three sources, his W-2 income as an employee, his 1099 income as an independent

contractor, and income from his company, as demonstrated on the tax return. Appellee did not present his W-2s or 1099. There was no evidence, such as receipts or expense vouchers, presented regarding the ordinary and necessary business expenses. The tax returns were the only evidence presented at the hearing. Appellee testified regarding his different jobs and the W-2s and the 1099 as referenced but could not testify how much he made at each job. Appellee's testimony also did not address any of the deductions on the tax return.

{¶13} "In computing income for purposes of child support, a court should pay particular attention to the possibility that a spouse who is the sole shareholder of a business is engaged in 'creative accounting' designed to cloak net income. Therefore, the court needs to consider all financial data which relates to the operation of that spouse's business." *Corrigan v. Corrigan*, 8th Dist. No. 74088 (May 13, 1999). The failure to do so has been found to constitute an abuse of discretion. See *Corrigan*; *Bowen v. Thomas*, 102 Ohio App.3d 196, 201 (3d Dist.1995); *Offenberg v. Offenberg*, 8th Dist. No. 78885, 2003-Ohio-269.

{¶14} Here, the trial court only considered appellee's tax returns to determine his income, and there was no other supporting evidence. Appellee did not provide support for his tax returns and deductions to income for the corporation. The trial court abused its discretion in determining appellee's income by only considering his tax returns. Appellant's first arguments regarding her assignment of error are well-taken.

{¶15} Appellant's last argument is that the trial court erred in determining her income because she presented evidence of $5,140 in business expenses, but the trial court did not deduct them from her income. Appellant contends that her witness, Donna Musilli, testified as an independent CAbi consultant, employed in the same capacity as appellant. Appellant argues that Musilli's testimony is that all CAbi consultants incur expenses twice per year in the amount of $2,500, plus $70 in shipping costs to purchase seasonal inventory, and she should have been permitted to deduct these expenses from her income.

{¶16} Actual cash expended on business equipment by a self-employed parent may be deducted from gross income. The deduction "recognizes the economic reality that money *legitimately* expended by a self-employed parent to make more money is, in fact, not available for child support purposes." (Emphasis sic.) *Helfrich v. Helfrich*, 10th

Dist. No. 95APF12-1599 (Sept. 17, 1996), citing *Kamm v. Kamm*, 67 Ohio St.3d 174 (1993); *Woods v. Woods*, 95 Ohio App.3d 222 (3d Dist.1994).

{¶17} However, here we find the trial court did not abuse its discretion in failing to deduct the expenses from appellant's income. Musilli's testimony was not as clear as appellant contends it was, and there was no connection made between Musilli's expenses and appellant's expenses. Appellant did not testify regarding her own expenses. Musilli testified, when asked about the investment to get involved as a CAbi consultant, as follows:

> I think it takes about 4- or $5,000 to get started, but the investment for the sample line is $2,500 and plus $70 for shipping, and then cost to go to our training which is twice a year.

(Tr. 64-65.)

{¶18} Musilli testified regarding the training, as follows:

> It's called The Scoop [the training].
>
> * * *
>
> Twice a year you travel to a location where you have anywhere from two to five - - two to five days of training and that is at your own expense. So it is the cost of the airfare, hotel, meals. There is a Scoop registration fee which sometimes they will waive but sometimes they don't.
>
> * * *
>
> Yes, it is mandatory.

(Tr. 65.)

{¶19} The trial court determined that, despite the witness's testimony, appellant failed to provide any documentation of her particular expenses and, therefore, the amount, if any, of the ordinary and necessary expenses that should be deducted was unknown. The trial court found that appellant testified that she would not "bother" the trial court with business deductions. (Apr. 3, 2013 Entry, 2.)

{¶20} Appellant did testify to the court that she did not believe she would be able to deduct any business expenses (Tr. 113; 127-28) and that her current income was

$40,439, which she rounded to $40,000. (Tr. 128; Plaintiff's Ex. D.) Given that testimony and the lack of receipts and expense vouchers for ordinary and necessary expenses, the trial court did not abuse its discretion in not deducting expenses from her income. It is not an abuse of discretion to refuse to deduct expenses from income if there was not a proper demonstration of support to justify those expenses. *See Dannaher.* Appellant's last argument is not well-taken, and, therefore, her assignment of error is sustained in part and overruled in part.

## V. CONCLUSION

{¶21} Accordingly, for the foregoing reasons, appellant's assignment of error is sustained in part as to the trial court's calculation of appellee's income and overruled in part as to the trial court's calculation of appellant's income; the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part and reversed in part; and this cause is remanded to that court to recalculate the child support obligation.

*Judgment affirmed in part, reversed in part,*
*and cause remanded with instructions.*

BROWN and O'GRADY, JJ., concur.

McCORMAC, J., retired, of the Tenth Appellate District,
assigned to active duty under the authority of the Ohio
Constitution, Article IV, Section 6(C).

_____