[Cite as *Roubanes-Luke v. Roubanes*, 2018-Ohio-1065.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barbara A. Roubanes Luke, | : | |
| Plaintiff-Appellee/<br>Cross-Appellant, | : | |
| | : | |
| v. | | No. 16AP-766 |
| | : | (C.P.C. No. 08DR-2851) |
| Matthew G. Roubanes, | | |
| | : | (REGULAR CALENDAR) |
| Defendant-Appellant/<br>Cross-Appellee. | : | |

D E C I S I O N

Rendered on March 23, 2018

**On brief:** *Denison Law Office*, and *Sallynda Rothchild Dennison*, for plaintiff-appellee. **Argued:** *Sallynda Rothchild Dennison.*

**On brief:** *The Nigh Law Group LLC, Joseph A. Nigh* and *Courtney A. Zollars; Law Office of Margaret L. Blackmore LLC*, and *Margaret L. Blackmore*, for defendant-appellant. **Argued:** *Joseph A. Nigh.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations.

KLATT, J.

{¶ 1} Defendant-appellant, Matthew G. Roubanes, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that granted plaintiff-appellee, Barbara A. Roubanes Luke, relief under Civ.R. 60(B). Luke cross appeals from the same judgment. For the following reasons, we affirm in part and reverse in part the trial court's judgment.

{¶ 2} Roubanes and Luke married in 1998 and had two children. On June 21, 2008, Luke filed a complaint for divorce. In an agreed order entered September 30, 2008, Luke assented to the requirement that she pay Roubanes $1,000 per month in temporary child support during the pendency of the divorce proceedings.

{¶ 3} On March 25, 2009, the trial court issued a scheduling order. The trial court required the parties to respond to all discovery requests by April 24, 2009, and it set August 10, 2009 as the trial date.

{¶ 4} Luke served her first set of interrogatories and requests for the production of documents on April 27, 2009—three days after the deadline for responding to such discovery. Luke served a second set of interrogatories on June 5, 2009. When Roubanes only turned over two documents in response to Luke's discovery requests, Luke did not move to compel. Rather, on July 30, 2009, Luke filed a motion in limine requesting that the trial court prohibit Roubanes from offering any undisclosed documentary evidence at trial.

{¶ 5} The record contains no ruling on Luke's motion in limine, likely because Roubanes and Luke agreed to resolve all disputed issues in a summary trial. In such a trial, each party informally presents evidence to a judge. No transcript of the proceedings is made.

{¶ 6} According to Roubanes and Luke, during their summary trial, they presented the trial judge with information regarding their assets and debts. Using the information the parties provided, the trial judge recorded in a "Domestic Trial Summary Form" the parties' assets and debts, along with a value for each. (Pl.'s Ex. 24, Roubanes Dep.) The trial judge then proposed a division of the marital property, to which both Roubanes and Luke agreed.

{¶ 7} In a judgment dated August 27, 2009, the trial court granted the parties a divorce, divided their marital property in the manner agreed to at the summary trial, and approved the shared parenting plan to which the parties agreed. The shared parenting plan required Luke to pay to Roubanes child support in the amount of $930.70 per month, plus a processing charge and cash medical support (in the absence of private health insurance coverage for the children). The parties arrived at that amount of child support after setting Roubanes' annual income at $40,000 and Luke's annual income at $75,520. The trial court

increased the amount of child support due by $554 "per month for 28 months, to pay past [temporary child support] arrearages and equalize [the] property settlement." (Aug. 27, 2009 Deviation Findings of Fact.)

{¶ 8} Luke did not pay the child support due, and a post-divorce arrearage began to accumulate. Roubanes filed motions for contempt when Luke failed to pay child support, fees owed to the guardian ad litem, and attorney fees awarded to him. Roubanes prevailed on a number of these motions. Luke eventually requested that the trial court modify the amount of child support due. The trial court granted Luke's motion and decreased the amount of her monthly child support obligation. This post-divorce litigation resulted in two appeals to this court. *See Roubanes v. Roubanes*, 10th Dist. No. 14AP-183, 2014-Ohio-5163; *Roubanes v. Roubanes*, 10th Dist. No. 13AP-369, 2013-Ohio-5778.

{¶ 9} On July 14, 2015, Luke filed a motion seeking relief under Civ.R. 60(B)(5) from the property distribution and child support provisions contained in the August 27, 2009 divorce decree. Luke also requested that that trial court relieve her of all child support obligations, whether imposed pre-divorce or post-divorce, and all orders requiring her to pay Roubanes' attorney fees. Luke asserted such relief was necessary because Roubanes had deliberately withheld from her and the trial court financial information relevant to the determination of his income and the division of the marital property. According to Luke, her motion was timely because she based it on Civ.R. 60(B)(5), and such motions need only be filed within a reasonable time after a final judgment.

{¶ 10} In opposing Luke's motion for Civ.R. 60(B) relief, Roubanes denied withholding financial information from Luke or the trial court. Additionally, Roubanes argued that Luke's motion was untimely. Given the character of Luke's allegations, Roubanes contended that Civ.R. 60(B)(3), not Civ.R. 60(B)(5), applied to her motion.[1] Because Luke did not file her motion within one year of the August 27, 2009 judgment, Roubanes maintained that she missed the one-year deadline for seeking relief under Civ.R. 60(B)(3).

{¶ 11} The trial court held a hearing on Luke's Civ.R. 60(B) motion. Both Luke and Roubanes testified and presented documentary evidence at the hearing.

---

[1] Civ.R. 60(B)(3) allows a court to vacate a judgment due to "fraud * * *, misrepresentation or other misconduct of an adverse party."

{¶ 12} In a judgment issued October 14, 2016, the trial court granted Luke's motion in part and denied it in part. First, the trial court examined affidavits that Roubanes had submitted to the court in 2008 and 2009. In the 2008 affidavit, Roubanes stated that his annual income was $6,000. In the 2009 affidavit, Roubanes stated that his annual income had risen to $7,200. The trial court compared Roubanes' representations to Luke's affidavit testimony, presented in support of her Civ.R. 60(B) motion, that Roubanes had deposited into his U.S. Bank and Chase Bank accounts $74,559.54 in 2008 and $103,243.58 in 2009.[2]

{¶ 13} The trial court found it mathematically impossible for an individual with such low annual income to amass the funds necessary to deposit such large sums. Thus, the trial court concluded that Roubanes had misrepresented his 2008 and 2009 annual incomes in his affidavit testimony. Additionally, the trial court decided that Roubanes had falsely testified regarding his 2008 income because he had claimed $4,500 in net monthly receipts in his 2008 budget and his budgeted expenses for 2008 far outstripped his reported income. Based upon its analysis of the evidence, the trial court determined that Roubanes had committed fraud upon the court, which justified granting Luke relief under Civ.R. 60(B)(5). The trial court also concluded that Luke's Civ.R. 60(B)(5) motion was timely because she filed it within a month of discovering the amounts Roubanes had deposited into his U.S. Bank and Chase Bank accounts in 2008 and 2009.

{¶ 14} The trial court then turned to fashioning relief for Luke. According to the trial court, Roubanes' misrepresentations regarding his income caused the court to issue inequitable child support orders and erroneously rule in Roubanes' favor when he moved for contempt based on non-payment of child support. Thus, the trial court concluded that Roubanes' fraud on the court warranted granting Luke relief from all child support orders and ordering Roubanes to reimburse Luke for the attorney fees awarded to Roubanes in connection with the findings of contempt.

{¶ 15} The trial court next considered Luke's allegations that Roubanes had failed to disclose certain marital assets and misrepresented the value of other marital assets. The trial court concluded that these allegations, if true, only amounted to the type of fraud

---

[2] According to Luke, Roubanes did not divulge the existence of the U.S. Bank account before or during the summary trial. Although Luke knew of the Chase Bank account at the time of trial, she claims that she did not know the amount of the funds that Roubanes had deposited into that account in 2008 or 2009. Roubanes maintains that he disclosed printouts of his bank account balances during the summary trial.

contemplated by Civ.R.  60(B)(3).  The trial court denied Luke relief from the property distribution because she failed to file her motion within one year of the August 27, 2009 judgment, as required for motions filed under Civ.R. 60(B)(3).

{¶ 16} Both Roubanes and Luke appealed the October 14, 2016 judgment.  However, neither party has asserted any assignments of error.  Pursuant to App.R.  16(A)(3), an appellant's brief must contain "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." Assignments of error are particularly important because appellate courts determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R.  16."  App.R. 12(A)(1)(b).  Consequently, without assignments of error, an appellate court has nothing to review.  *Pack v. Hilock Auto Sales*, 10th Dist. No. 12AP-48, 2012-Ohio-4076, ¶ 13.

{¶ 17} Appellate courts have discretion to dismiss appeals that fail to set forth assignments of error.  *CitiMortgage, Inc. v. Asamoah*, 10th Dist. No. 12AP-212, 2012-Ohio-4422, ¶ 5; *Tonti v. Tonti*, 10th Dist. No. 06AP-732, 2007-Ohio-2658, ¶ 2.  Many times, however, appellate courts instead review the appealed judgment using the appellant's arguments in the interest of serving justice.  *Asamoah* at ¶ 6; *Tonti* at ¶ 2.  We will follow that path in this case.

{¶ 18} For Roubanes, we draw assignments of error from the section headings in his appellant's brief.  Thus, Roubanes assigns as error:

> [1.] The trial court erred when it found that Appellant committed "fraud upon the court" and granted Cross-Appellant's Motion for Relief pursuant to Civ.R. 60(B).
>
> [2.] The trial court erred and abused its discretion when it found Cross-Appellant's Motion for 60(B) [sic] was filed in a timely manner.
>
> [3.]  Trial court abused its discretion when they [sic] found that any and all child support orders naming Cross-Appellant as the obligor were released and any attorney fees awarded to Appellant were to be reimbursed.
>
> [4.] The trial court's failure to recuse itself from this matter prior to holding a hearing on Cross-Appellant's Motion for 60(B) [sic] Relief, or prior to issuing a decision, was an abuse of discretion and violation of the Judicial Cannons [sic].

(Emphasis deleted.)

{¶ 19} For Luke, we extract an assignment of error from the statement of issues contained in the cross-appellant's brief. Thus, Luke assigns as error:

> [T]he trial court abused its discretion by failing to find that Defendant/Appellant's misrepresentation of the property value in West Virginia as $800 at the time of the divorce also constituted fraud upon the court and was therefore timely raised by Plaintiff/Cross-Appellant.

(Emphasis deleted.)

{¶ 20} By Roubanes' first assignment of error, he argues that the trial court erred in finding that he committed fraud upon the court and granting Luke relief under Civ.R. 60(B)(5). We agree.

{¶ 21} Pursuant to Civ.R. 60(B), a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
>
> (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
>
> (5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1) through (5). To prevail on a Civ.R. 60(B) motion, a party must demonstrate that: (1) it has a meritorious claim or defense to present if the court grants it relief; (2) it is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) it filed the motion within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it filed the motion not more than one year after the judgment, order, or proceeding was entered or taken. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. If the moving party fails to

demonstrate any of these three requirements, the trial court should overrule the motion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). A trial court exercises its discretion when ruling on a Civ.R. 60(B) motion, and, thus, an appellate court will not disturb such a ruling absent an abuse of discretion. *Griffey v. Rajan*, 33 Ohio St.3d 75, 77 (1987).

{¶ 22} A court may grant relief under Civ.R. 60(B)(5), the so-called "catch-all" provision, only in those extraordinary and unusual cases where the moving party demonstrates substantial grounds warranting relief from judgment. *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64 (1983), paragraph two of the syllabus; *Social Psychological Servs., Inc. v. Magellan Behavioral Health, Inc.*, 10th Dist. No. 10AP-326, 2010-Ohio-6531, ¶ 17. Such substantial grounds exist if the moving party establishes a fraud upon the court. *Coulson v. Coulson*, 5 Ohio St.3d 12 (1983), paragraph one of the syllabus. Fraud upon the court exists if the fraud " 'defile[s] the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudicating cases that are presented for adjudication.' " *Id.* at 15. Examples of fraud upon the court justifying Civ.R. 60(B)(5) relief include egregious misconduct such as bribery of a judge or jury member by a third party or fabrication of evidence by counsel. *Barton v. Barton*, 2d Dist. No. 2015-CA-53, 2016-Ohio-5264, ¶ 19; *Wilkerson v. Wilkerson*, 12th Dist. No. CA2013-06-089, 2014-Ohio-1322, ¶ 17; *Stairwalt v. Trisha*, 2d Dist. No. 2007 CA 30, 2008-Ohio-2597, ¶ 14.

{¶ 23} Courts carefully distinguish between fraud upon the court, which is a basis for relief from judgment under Civ.R. 60(B)(5), and fraud upon a party, which is a basis for relief from judgment under Civ.R. 60(B)(3). Technically, any fraud connected with the presentation of a case to a court could constitute fraud upon the court in a broad sense. *Coulson* at 15. However, courts cannot invoke Civ.R. 60(B)(5) when any of the more specific provisions of Civ.R. 60(B) apply. *Cuyahoga Support Enforcement Agency v. Guthrie*, 84 Ohio St.3d 437, 440 (1999); *Lohman* at paragraph one of the syllabus. As we stated above, Civ.R. 60(B)(3) permits relief from judgment in cases of fraud, misrepresentation, and other misconduct by an adverse party. Thus, Civ.R. 60(B)(3) applies when an adverse party's fraud, misrepresentation, or misconduct in obtaining a judgment has prevented the other party from fully and fairly presenting its case. *Bank of*

*Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 13; *PNC Bank, N.A. v. Botts*, 10th Dist. No. 12AP-256, 2012-Ohio-5383, ¶ 15. "Fraud on an adverse party may exist when, for example, a party presents material false testimony at trial, and the falsity is not discovered until after the trial." *Botts* at ¶ 15; *accord Barton* at ¶ 18; *In re Dankworth Trust*, 7th Dist. No. 14 BE 9, 2014-Ohio-5825, ¶ 38. If courts accorded fraud upon the court a broad meaning, it could easily subsume the type of fraud covered by Civ.R. 60(B)(3). Courts, therefore, narrowly construe fraud upon the court in order to prevent it from overwhelming Civ.R. 60(B)(3) and rendering Civ.R. 60(B)(3)'s one-year time limitation meaningless. *Heltzel v. Heltzel*, 11th Dist. No. 3788 (Sept. 30, 1987); *Hartford v. Hartford*, 53 Ohio App.2d 79, 83 (8th Dist.1977); *accord Great Coastal Express, Inc. v. Internatl. Bhd. of Teamsters*, 675 F.2d 1349, 1356 (4th Cir.1982) ("The principal concern motivating narrow construction is that the otherwise nebulous concept of 'fraud on the court' could easily overwhelm the specific provision of 60(b)(3) and its time limitation and thereby subvert the balance of equities contained in the Rule.").

{¶ 24} Due to this narrow construction, in the usual case, fraud in the presentation of evidence amounts to fraud upon a party. *Coulson* at 15. False testimony and the withholding of evidence generally fall within Civ.R. 60(B)(3), not Civ.R. 60(B)(5). *Derico v. Schimoler*, 8th Dist. No. 94935, 2011-Ohio-615, ¶ 12; *Caron v. Manfresca*, 10th Dist. No. 98AP-1399 (Sept. 23, 1999); *Still v. Still*, 4th Dist. No. 95CA15 (June 25, 1996); *accord Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir.1995) (holding that "perjury alone, absent allegation of involvement by an officer of the court * * *, has never been sufficient" to constitute fraud upon the court); *Gleason v. Jandrucko*, 860 F.2d 556, 560 (2d Cir.1988) (holding that "neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant"); *Kerwit Med. Prods., Inc. v. N & H Instruments, Inc.*, 616 F.2d 833, 837 (5th Cir.1980) ("[M]ere nondisclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to 'fraud upon the court.' "). "The possibility of perjury, even concerted, is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination, and, where warranted, [a Civ.R. 60(B)(3)] motion for relief from judgment." *Geo. P. Reintjes* at 49. Fraud upon the court is limited to the more egregious

forms of subversion of the legal process, which a court cannot necessarily expect to be exposed by the normal adversary process. *Great Coastal Express* at 1357.

{¶ 25} In *Scholler v. Scholler*, 10 Ohio St.3d 98 (1984), the Supreme Court of Ohio considered whether a fraud upon the court occurred based on an ex-wife's allegation that her ex-husband fraudulently withheld critical financial information and misrepresented his financial status during negotiation of a separation agreement. The court defined "fraud upon the court" "as the situation '[w]here an officer of the court, *e.g.*, an attorney * * * actively participates in defrauding the court * * *.' " *Id.* at 106, quoting *Coulson* at 15. Because the ex-wife alleged that the adverse party—not an officer of the court—had committed the fraud at issue, the court concluded that the ex-wife had not established fraud upon the court. *Id.*

{¶ 26} Subsequently to *Scholler*, multiple Ohio courts, including this court, have concluded that, if the alleged fraud occurred between the parties, Civ.R. 60(B)(3) is the only ground upon which the aggrieved party can seek relief from a prior judgment. If, on the other hand, an attorney or other officer of the court perpetrates a fraud on the court, then Civ.R. 60(B)(5) is the proper basis for requesting relief. *Wells Fargo Bank, N.A. v. Bluhm*, 6th Dist. No. E-13-052, 2015-Ohio-921, ¶ 30-31; *Costakos v. Costakos*, 10th Dist. No. 03AP-959, 2004-Ohio-2138, ¶ 11; *McGowan v. Stoyer*, 10th Dist. No. 02AP-263, 2002-Ohio-5410, ¶ 18; *Applegate v. Applegate*, 10th Dist. No. 99AP-1321 (Sept. 21, 2000); *In re Foreclosure of Liens for Delinquent Land Taxes*, 10th Dist. No. 99AP-714 (Mar. 28, 2000); *Turoczy v. Turoczy*, 30 Ohio App.3d 116 (8th Dist.1986), syllabus; *accord In re Dankworth Trust* at ¶ 38 (holding that Civ.R. 60(B)(5) is "used when the fraud alleged is done by an officer of the court; Civ.R. 60(B)(3) only applies to fraud that is committed by an adverse party"); *BAC Home Loans Servicing, L.P. v. Meister*, 11th Dist. No. 2012-L-042, 2013-Ohio-873, ¶ 16, quoting *Coulson* at 15 ("[A] party may use Civ.R. 60(B)(5) to raise the issue of fraud upon the court; however, this concept has been distinguished from fraud by an adverse party and has been carefully limited to the occasion where an 'officer of the court * * * actively participates in defrauding the court.' "); *Huffman v. Huffman*, 4th Dist. No. 00CA704 (Oct. 30, 2001) ("[I]n order to show fraud upon the court, and be subject to Civ.R. 60(B)(5)'s more lenient time limits, a party must show that an officer of the court actively participated in defrauding the court.").

{¶ 27} Here, the trial court concluded that Roubanes committed a fraud on the court because he misrepresented his income for 2008 and 2009 in affidavits that he submitted to the court. We will assume, without deciding, that the trial court correctly found that Roubanes engaged in fraud by falsely testifying about his income. Therefore, the issue becomes whether Roubanes committed fraud on the court, or on Luke. We conclude that Roubanes' false testimony constituted fraud on Luke. Roubanes' fraud is the kind of fraud either rooted out through the adversary process or corrected post-judgment through the application of Civ.R. 60(B)(3).[3]

{¶ 28} Nevertheless, Luke could establish the level of egregiousness necessary for establishing fraud upon the court by showing that an officer of the court participated in Roubanes' fraud. Luke did not argue or present evidence to the trial court that an officer of the court was involved in the fraud at issue. Now, on appeal, Luke argues for the first time that a fraud upon the court occurred because Roubanes, as a pro se litigant, was the equivalent of an officer of the court.

{¶ 29} Generally, a party waives the right to appeal an issue that the party could have, but did not, raise before the trial court. *Columbus City School Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 144 Ohio St.3d 549, 2015-Ohio-4837, ¶ 14; *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34. Because Luke did not argue before the trial court that Roubanes was, in effect, an officer of the court, she waived that argument on appeal. This court, therefore, need not consider Luke's argument.

{¶ 30} Moreover, even had Luke not waived her argument, she cannot prevail on it. An "officer of the court" is " '[a] person who is charged with upholding the law and administering the judicial system[;] typically, *officer of the court* refers to a judge, clerk, bailiff, sheriff, or the like, but the term also applies to a lawyer, who is obliged to obey court rules and who owes a duty of candor to the court.' " (Emphasis sic.) *Wilkerson*, 2014-Ohio-1322, at ¶ 19, quoting *Black's Law Dictionary* 1119 (8th Ed.2004). A pro se litigant is not an officer of the court and, consequently, cannot commit a fraud upon the court. *Gerber v. Gospich*, 8th Dist. No. 60832 (Nov. 7, 1991); *accord Damiani v. Duffy*, D.Del. No. 12-1637-RGA, 2017 U.S. Dist. LEXIS 21922 (Feb. 16, 2017); *Vaughan v. Brigham*, E.D.Ken.

---

[3] The adversarial process provided Luke with the means to uncover evidence to expose Roubanes' fraud, but she did not use those means. Luke failed to diligently pursue discovery and she relinquished her right to a full trial, where she could have cross-examined Roubanes.

No. 3: 10-05-DCR, 2011 U.S. Dist. LEXIS 72187, 2011 WL 2633369 (July 5, 2011), *aff'd*, 6th Cir. No. 11-5981, 2012 U.S. App. LEXIS 21754 (May 9, 2012); *Florence v. Donald*, S.D.Ga. No. CV 306-087, 2008 U.S. Dist. LEXIS 31259, 2008 WL1758796 (Apr. 16, 2008).

{¶ 31} In sum, Luke failed to prove that fraud upon the court occurred in this case. We thus conclude that the trial court erred in finding that Roubanes committed a fraud upon the court and granting Luke Civ.R. 60(B)(5) relief on that basis. Accordingly, we sustain Roubanes' first assignment of error.

{¶ 32} Given our ruling on Roubanes' first assignment of error, we must reverse the trial court's judgment to the extent that it grants Luke relief from the orders requiring Luke to pay child support and Roubanes' attorney fees. Roubanes' remaining assignments of error advance alternative reasons for reversing the same portion of the judgment. Thus, our determination of Roubanes' first assignment of error renders moot the remaining assignments of error. We, consequently, will not rule on the second through fourth assignments of error.

{¶ 33} By Luke's cross assignment of error, she argues that the trial court erred in refusing to find that Roubanes engaged in fraud upon the court by misrepresenting the value of real property the couple owned in West Virginia. We disagree.

{¶ 34} During the parties' marriage, Roubanes purchased a house in West Virginia. Immediately prior to the summary trial, Roubanes filed a "Statement of Assets and Liabilities" in which he valued the West Virginia property at $38,640 and represented that the mortgage on the property amounted to $37,834.04. No transcript was made of the summary trial, so we have no record of exactly what Roubanes told the trial judge about the West Virginia property's value during the summary trial. When asked at his deposition what he said at the summary trial, Roubanes stated that the value he offered "came right off the tax statement. It came right off the assessed value statement; and I would be guessing, but I think it was thirty-six or thirty-eight thousand dollars." (Roubanes Dep. at 298-99.)

{¶ 35} The trial judge included the West Virginia property in the "Domestic Trial Summary Form," but he did not note in the form the appraised value of the property or the amount owed on the mortgage. Instead, the form only lists the "equity value" of the West Virginia property at $800. (Pl.'s Ex. 24, Roubanes Dep.) This value is consistent with the

figures Roubanes reported in his "Statement of Assets and Liabilities," which reflected that the equity value of the West Virginia property was $805.96. The trial court used the $800 value when dividing the parties' marital property.

{¶ 36} During the Civ.R. 60(B) hearing, Luke produced Exhibit E, which her attorney described as a printout from the West Virginia auditor's website. Exhibit E appears to show that the value of the West Virginia property was $67,000 in tax year 2009.[4] Luke relied on Exhibit E to contend that Roubanes misrepresented the value of the West Virginia property during the summary trial. Luke argued to the trial court that this misrepresentation warranted relief under Civ.R. 60(B)(5). The trial court rejected Luke's argument, stating the allegations of fraud associated with the marital property division constituted fraud upon Luke, and not the court.

{¶ 37} Applying the law set forth above, we conclude that the alleged misrepresentation of the West Virginia property's value is not fraud upon the court. Luke merely complains that Roubanes falsely testified about the value of a marital asset. She does not claim that an officer of the court participated in the alleged fraud. Accordingly, the trial court did not err in concluding that Roubanes did not commit fraud upon the court when he allegedly misrepresented the value of the West Virginia property.

{¶ 38} In making her appellate argument, Luke cites precedent from this court holding that a trial court may grant relief under Civ.R. 60(B)(5) if a party fails to disclose a marital asset prior to the entry of a divorce decree. *See, e.g., Clymer v. Clymer*, 10th Dist. No. 91AP-438 (Sept. 10, 1991); *Hellwege v. Hellwege*, 10th Dist. No. 85AP-927 (June 5, 1986). Notably, in these cases, the question was not whether a party had committed fraud upon the court, thus entitling the opposing party to relief under Civ.R. 60(B)(5). Rather, the precedent at issue held that a party's failure to disclose a marital asset can constitute a Civ.R. 60(B)(5) ground independent from the fraud-upon-the-court basis for relief. *Trenner v. Trenner*, 10th Dist. No. 01AP-743 (Jan. 31, 2002).

{¶ 39} The above-cited cases are irrelevant to this case for two reasons. First, Luke's assignment of error only asserts that the trial court erred in failing to find fraud upon the

---

[4] No witness authenticated Exhibit E. Therefore, there is no evidence explaining the origin or meaning of the information contained on the page of the exhibit that appears to state the property's appraised value. Despite the murkiness surrounding Exhibit E, we will presume for purposes of this appeal that Exhibit E establishes that in 2008 a West Virginia government entity appraised the parties' property at $67,000.

court due to Roubanes' alleged misrepresentation regarding the West Virginia property. Because Luke's assignment of error does not contend that the trial court erred in failing to grant her Civ.R. 60(B) relief based on the rule followed in *Clymer* and *Hellwege*, we need not address that contention. *See Bonn v. Bonn*, 10th Dist. No. 12AP-1047, 2013-Ohio-2313, ¶ 9 ("[T]his court rules on assignments of error only, and will not address mere arguments."). Second, the precedent at issue only applies when a marital asset is entirely omitted from the property division; not where a party misstates an asset's value. *Tait v. Tait*, 10th Dist. No. 92AP-306 (Sept. 29, 1992); *Hellwege*. As the alleged misrepresentation here relates solely to the property's value, this precedent does not justify relief from judgment in this case.

{¶ 40} In sum, we conclude that the trial court did not err in determining that Roubanes did not engage in fraud upon the court when he allegedly misstated the value of the West Virginia property. Accordingly, we overrule Luke's assignment of error.

{¶ 41} For the foregoing reasons, we sustain Roubanes' first assignment of error, which moots the second through fourth assignments of error. Additionally, we overrule Luke's sole assignment of error. We thus reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, to the extent that it granted Luke Civ.R. 60(B) relief, and we affirm that judgment to the extent that it denied Luke Civ.R. 60(B) relief.

*Judgment affirmed in part; reversed in part.*

BROWN, P.J., and BRUNNER, J., concur.

————————————