[Cite as *Planchak v. Ladd*, 2023-Ohio-1836.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MICHAEL P. PLANCHAK | : | |
| | : | |
| Appellant | : | C.A. No. 29703 |
| | : | |
| v. | : | Trial Court Case No. 2006 CV 04854 |
| | : | |
| B. GARY LADD | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 2, 2023

. . . . . . . . . . .

P.J. JANIS, Attorney for Appellee

MICHAEL P. PLANCHAK, Pro Se Appellant

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Michael P. Planchak appeals pro se from the trial court's order overruling his Civ.R. 60(B) motion to vacate the trial court's 2007 judgment in favor of B. Gary Ladd. Planchak and Ladd entered into a joint venture to purchase a condominium in Florida, intending to quickly resell it for a profit, but the property did not sell, and the 2007 judgment

ordered Planchak to reimbuse Ladd for money Ladd had spent to maintain the property. Planchak argues that the trial court erred in concluding that he did not present a meritorious claim warranting relief from judgment and that his motion was untimely, and he argues that Ladd had "unclean hands" at trial. Finding no abuse of discretion, we affirm the trial court's judgment overruling Planchak's motion to vacate.

## Procedural History

{¶ 2} Planchak filed a complaint against Ladd on June 22, 2006, seeking judgment in the amount of $67,585.84 following the parties' pre-construction purchase of a condominium in Sarasota County, Florida. Planchak alleged that Ladd had misrepresented that the property was a good investment and would sell quickly for a profit once construction was completed. In a counterclaim, Ladd sought damages for expenses he had paid to maintain the property when it did not sell as anticipated. Following a bench trial, the trial court granted judgment in favor of Ladd in May 2007 in the amount of $20,795.66, plus interest; it also entered other orders with respect to ownership and maintenance of the property.

{¶ 3} On June 21, 2007, Planchak appealed from the trial court's judgment, but he later dismissed the appeal voluntarily. No further substantial action was taken in the case until Planchak filed his motion to vacate in December 2022.

## Background

{¶ 4} The following background was provided in the trial court's 2007 judgment. Ladd and Planchak were long-time friends who both retired from General Motors. Ladd was involved in real estate sales and investing. In 2005, Ladd told Planchak that a quick

and substantial profit could be made by purchasing real estate on Florida's west coast near Sarasota. Together, Ladd and Planchak visited a condominium project known as Cappello I at the Venetian Golf and River Club in Venice, Florida, where new condos were being built. They planned to purchase a condo pre-construction, sell it within a few days of its completion, and equally divide the anticipated profit.

{¶ 5} On June 29, 2005, with Planchak's knowledge, Ladd executed a purchase contract for a condominium at the resort for $564,990. The price was to be paid as follows: an initial payment of $5,000; $107,998 to be paid on July 14, 2005, and the balance of $451,992 due at closing. On July 21, 2005, Planchak gave Ladd a check for $60,000; the memo line on the check reflected that the amount was for "1/2 interest in the Venetian condo." On August 1, 2005, the parties and Ladd's wife, Pat Ladd, confirmed their relationship in writing as follows:

> This document is to verify that Michael P. Planchak is 50% owner in a property located at IFL and Venetian Golf and River Club. Because of their business experience, it is agreed that [Gary] Ladd, and or Pat Ladd, will be responsible for the business decisions, the decisions to be made in an effort to make the maximum profit from the property. In the event of a death or incapacity of Pat and Gary Ladd, either Michael P. Planchak or the Ladd interests can call for the sale of the property at market value at any time.

{¶ 6} The condominium was constructed between the fall of 2005 and the early spring of 2006. In January 2006, Ladd advised Planchak that the market was softening and they might be unable to clear a profit on the sale of the condo. Ladd told Planchak

that they would owe money on the mortgage plus maintenance fees, insurance, and taxes. They agreed to acquire an interest-only mortgage and that the deed would be in Ladd's name only.

{¶ 7} On March 23, 2006, Planchak transferred $7,585.84 to Ladd for his share of the closing costs. The closing occurred on March 29, 2006. Planchak did not attend. By mid-April, it was clear to the parties that they could not resell the property for a profit because its market value was $50,000 to $75,000 less than their cost of about $595,000.

{¶ 8} Ladd suggested that they furnish the property and lease it to a third party, but Planchak did not agree. Planchak's attorney requested that Ladd refund his money. Ladd attempted to sell the property but was unable to do so. In September 2006, Ladd leased the condominium, and the lease income was allocated to the expenses incurred during the period of the lease. Ladd applied Planchak's portion of the income to the interest only mortgage. Ladd paid all other expenses to maintain the property to prevent tax or homeowners' association liens and foreclosure. Ladd paid $41,591.32 in expenses through the end of January 2007. The mortgage payment was $3,500 per month.

{¶ 9} In granting judgment in favor of Ladd, the court concluded that depreciation of real estate in the Sarasota area had occurred during the construction of the condominium. The court found that the parties' agreement was partially written and partially oral, and that the written agreement did not cover all of the elements of their contract. It found that the parties had entered into a joint venture and had a "community of interest" in acquiring and subsequently selling the condominium for a profit, with Ladd

responsible for the execution of the purchase and sale. The court found that "one joint venturer may surrender control of a part of the venture to a co-venturer without defeating the existence of the joint venture where the overall control of the enterprise is shared by the two parties." According to the court, Planchak demonstrated that he had overall control because he was a 50 percent owner, but that he had surrendered some control of the venture to Ladd. In other words, "the joint proprietorship and control element of a joint venture" was met.

{¶ 10} As noted above, the court granted judgment in favor of Ladd and against Planchak in the amount of $20,795.66 plus interest at the rate of eight percent per annum from the date of judgment. The court ordered Ladd and Planchak to pay the expenses of ownership of the condominium, including but not limited to the monthly mortgage payment, any fees associated with the condominium, taxes, and insurance until the property was sold.

### Arguments and Analysis

{¶ 11} Planchak asserts three assignments of error, arguing that the court erred in: 1) finding that he had not presented a meritorious claim for relief; 2) finding that his motion was not filed in a reasonable time; and 3) failing to recognize that Ladd had "unclean hands." In his responsive brief, Ladd requests attorney fees pursuant to App.R. 23. We will consider Planchak's assignments of error together.

{¶ 12} Civ.R. 60(B) provides as follows:

On motion and upon such terms as are just, the court may relieve a party

or his legal representative from a final judgment, order or proceeding for the

following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

{¶ 13} We have recognized that "Civ.R. 60(B) represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and that justice should be done." *GMAC Mtge., L.L.C. v. Herring*, 189 Ohio App.3d 200, 2010-Ohio-3650, 937 N.E.2d 1077, ¶ 30 (2d Dist.), citing *Chapman v. Chapman*, 2d Dist. Montgomery No. 21244, 2006-Ohio-2328, ¶ 13.  "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious defense or claim to present if relief is granted, (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B), and (3) the motion is made within a reasonable time." *Id.*, citing *GTE Automatic Elec., Inc. v. ARC Indus., Inc.*, 47 Ohio St.2d 146, 351 N.E.2d

113 (1976), paragraph two of the syllabus. All of these requirements must be satisfied, and the motion should be denied if any one of the requirements is not met. *Id.*, citing *Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994), and *Cincinnati Ins. Co. v. Schaub*, 2d Dist. Montgomery No. 22419, 2008-Ohio-4729, ¶ 15.

{¶ 14} "In order to establish a meritorious claim or defense under Civ.R. 60(B), the movant is required to allege a meritorious claim or defense, not to prove that [he] will prevail on such claim or defense. * * *." *Aurora Loan Servs., L.L.C. v. Wilcox*, 2d Dist. Miami No. 2009-CA-9, 2009-Ohio-4577, ¶ 14. "Civ.R. 60(B) exists to resolve injustices that are so great that they demand a departure from the strict constraints of res judicata. * * * However, the rule does not exist to allow a party to obtain relief from his or her own choice to forgo an appeal from an adverse decision." *Bank of Am., N.A. v. Kutchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 15.

{¶ 15} In addition to a motion pursuant to Civ.R. 60(B), the movant "must also file a brief or memorandum of fact and law, and affidavits, depositions, answers to interrogatories, exhibits and any other relevant material * * * [which] must contain operative facts." *Adomeit v. Baltimore*, 39 Ohio App.2d 97, 316 N.E.2d 469 (8th Dist. 1974), paragraph two of the syllabus. "Broad, conclusory statements do not satisfy the requirement that a Civ.R. 60(B) motion must be supported by operative facts that would warrant relief from judgment. * * *." *Aurora Loan Servs.* at ¶ 14.

{¶ 16} "[M]ultiple Ohio courts * * * have concluded that, if the alleged fraud occurred between the parties, Civ.R. 60(B)(3) is the only ground upon which the aggrieved party can seek relief from a prior judgment." *Roubanes Luke v. Roubanes,*

2018-Ohio-1065, 109 N.E.3d 671, ¶ 26 (10th Dist.). "[I]n the usual case, fraud in the presentation of evidence amounts to fraud upon a party. * * * False testimony and the withholding of evidence generally fall within Civ.R. 60(B)(3), not Civ.R. 60(B)(5)." *Id.* at ¶ 24.

{¶ 17} "If, on the other hand, an attorney or other officer of the court perpetrates a fraud on the court, then Civ.R. 60(B)(5) is the proper basis for requesting relief." *Id. See also Huffman v. Huffman*, 4th Dist. Adams No. 00CA704, 2001 WL 1383020, *4 (Oct. 30, 2001) ("in order to show fraud upon the court, and be subject to Civ.R. 60(B)(5)'s more lenient time limits, a party must show that an officer of the court actively participated in defrauding the court.") "Examples of fraud upon the court justifying relief include egregious misconduct such as bribery of a judge or jury member by a third party or fabrication of evidence by counsel." *Roubanes Luke* at ¶ 22.

{¶ 18} "Civ.R. 60(B)(5) is intended as a catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment, but it is not to be used as a substitute for any of the other more specific provisions of Civ.R. 60(B)." *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the syllabus. "Civ.R. 60(B)(5) is only to be used in an extraordinary and unusual case when the interests of justice warrants it." *Andomeit v. Baltimore*, 39 Ohio App.2d 97, 105, 316 N.E.2d 469 (1974). "The grounds for invoking Civ.R. 60(B)(5) should be substantial." *Caruso-Ciresi* at paragraph two of the syllabus.

{¶ 19} We review a trial court's ruling on a Civ.R. 60(B) motion for an abuse of discretion. *Id.* "A trial court abuses its discretion when its decision is 'unreasonable,

arbitrary, or unconscionable." *Bissell v. Bissell,* 2d Dist. Montgomery No. 26855, 2016-Ohio-3086, ¶ 9, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is an abuse of discretion for a trial court to overrule a Civ.R. 60(B) motion for relief from judgment without holding an evidentiary hearing only if the motion or supportive affidavits contain allegations of operative facts which would warrant relief under Civ.R. 60(B)." *Aurora Loan Servs.,* 2d Dist. Miami No. 2009-CA-9, 2009-Ohio-4577, at ¶ 15.

{¶ 20} "In Ohio, a pro se litigant 'is presumed to have knowledge of the law and of correct legal procedure and is held to the same standard as all other litigants.' * * *." *Citibanks S. Dakota, N.A. v. Wood,* 169 Ohio App.3d 269, 2006-Ohio-5755, 862 N.E.2d 576, ¶ 57 (2d Dist.). Finally, it "is settled law that issues raised for the first time on appeal and not having been raised in the trial court are not properly before this Court and will not be addressed. * * *." *Henley v. Ohio Real Estate Appraiser Bd.,* 2d Dist. Montgomery No. 19744, 2003-Ohio-3041, ¶ 12.

{¶ 21} Planchak cited Civ.R. 60(B)(5) as the basis for his motion to vacate judgment. He asserted that a video of the trial "was located" in January 2021 and transcribed on June 21, 2021. He argued that there was misconduct perpetrated against him by his and Ladd's counsel at trial. Planchak argued that Ladd's counsel presented an expenses ledger from March 29, 2006, until January 29, 2007, for a total of $41,591.32 in expenses at the condominium, but that receipts to support the ledger were not provided, and it was not provided in discovery. He argued that his own counsel failed to object to the admission of the ledger. Planchak argued that the ledger had been inadmissible and

that it had been an ethics violation to introduce it. He cited the Ohio Code of Judicial Conduct and the Ohio Code of Professional Responsibility. Planchak argued that his motion was filed within one year of learning of "this fraud on the court" in early 2022 and thus was timely.

{¶ 22} Planchak further argued that the court had abused its discretion in concluding that he and Ladd entered into a joint venture and that Ladd's testimony was not truthful. He asserted that the fact that "all the officers of the court ignored clear ethics violations is proof of collusion." Planchak asserted that Ladd had full control of the condominium purchase and he had none, as demonstrated by Ladd's decision to rent the property against Planchak's wishes. He argued that renting the property represented a continuing business and not a single transaction as required for a joint venture.

{¶ 23} In overruling the motion to vacate, the court concluded that Planchak had not provided evidence of a meritorious claim to present if relief were granted. It found that Planchak's claim "is specified by Civ.R. 60(B)(3)." The court also concluded that Planchak's assertion that the trial court had wrongly found that the parties had entered into a joint venture was grounds for an appeal, which Planchak had failed to pursue. The court found that the motion to vacate was untimely and that the ledger of expenses had been properly admitted at trial.

{¶ 24} Planchak filed five exhibits with his brief, which included the trial court's March 9, 2023 decision overruling a second motion to vacate filed by Planchak on February 24, 2023, Planchak's AT&T phone records, Ladd's February 1, 2007 deposition, the contract for the purchase of the condominium, and a pilot log. While the phone

records, pilot log, and the trial court's decision on his second motion to vacate allegedly support Planchak's argument that Ladd had "unclean hands" and was untruthful at trial, those exhibits were not part of the trial court record and are not properly before us.

**{¶ 25}** We agree with the trial court that Planchak failed to satisfy each of the Civ.R. 60(B) requirements and that Planchak's motion was untimely. While Planchak expressly based his motion on Civ.R. 60(B)(5), the trial court determined that Planchak's argument fell under Civ.R. 60(B)(3). We agree that Planchak's arguments regarding Ladd's alleged lack of truthfulness and "unclean hands" fell under Civ.R. 60(B)(3). Because Planchak waited over 15 years to file his motion to vacate, he cannot rely upon the grounds for relief in Civ.R. 60(B)(3), which must be asserted not more than one year of the trial court's judgment.

**{¶ 26}** Civ.R. 60(B)(5) is not a substitute for Civ.R. 60(B)(3), and even if we were to consider the motion to vacate pursuant to Civ.R. 60(B)(5), Planchak failed to demonstrate substantial grounds warranting relief due to an alleged fraud upon the court. Planchak's argument that he did not discover the "fraud" until early 2022, after the transcript was transcribed, ignores the fact that he was present at the trial, represented by counsel, and aware of the proceedings. Planchak does not explain why, upon discovering the alleged fraud in early 2022, he waited until December of that year to file his untimely motion to vacate. Planchak is presumed to have knowledge of the law and the correct legal procedure. Planchak's broad, conclusory assertions of fraud and misconduct were not supported by operative facts warranting relief. There was no evidence that an officer of the court actively participated in defrauding the court. In other

words, Planchak did not demonstrate that he had a meritorious claim to present. The ledger about which Planchak complains was identified as a business record by Ladd and properly admitted without objection at trial. The admission of the ledger, as well as Planchak's argument that the court erred in concluding that the parties had entered into a joint venture to purchase the condominium, were potential bases for an appeal, which Planchak did not pursue. Civ.R. 60(B) is not a substitute for an appeal.

{¶ 27} In his brief, Ladd requests attorney fees pursuant to App.R. 23. Tthat rule provides: "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." Ladd did not request attorney fees by separate motion. App.R. 15 provides that "an application for an order or other relief shall be made by motion with proof of service on all other parties." "Therefore, " '[a] request for App.R. 23 sanctions should be the subject of a separately filed motion.' " *State v. Baker*, 2d Dist. Montgomery No. 29546, 2023-Ohio-855, ¶ 20, fn. 1, quoting *Stuller v. Price*, 10th Dist. Franklin No. 02AP-267, 2003-Ohio-583, ¶ 30. Given that Ladd has not filed a separate motion for attorney fees, his request for attorney fees is not properly before the court.

## Conclusion

{¶ 28} In the absence of a meritorious claim to present, and failing to establish that he is entitled to relief under either Civ.R. 60(B)(3) or (5), an abuse of discretion is not demonstrated in the court's decision overruling Planchak's untimely motion to vacate. Planchak's assignments of error are accordingly overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and LEWIS, J., concur.